Approved: _____BWS_____
BENJAMIN WOODSIDE SCHRIER
Assistant United States Attorneys

ORIGINAL

Before: HONORABLE KEVIN N. FOX
United States Magistrate Judge
Southern District of New York

19MAG1177

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA       :     COMPLAINT
                               :
         - v. -                :     Violation of 21 U.S.C.
                               :     § 846
                               :
ELIZABETH PAEZ VAZQUEZ,        :     COUNTIES OF OFFENSE:
LUIS AARON SOLANO-MONROY,      :     MANHATTAN, BRONX,
JUAN PABLO BECERRA,            :     WESTCHESTER
   a/k/a "Tony,"               :
                               :
         Defendants.           :

- - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

       JOSEPH R. SCHLEE, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE
(Narcotics Conspiracy)

       1.  From at least in or about November 2019 up to and including on or about December 16, 2019, in the Southern District of New York and elsewhere, ELIZABETH PAEZ VAZQUEZ, LUIS AARON SOLANO-MONROY, and JUAN PABLO BECERRA, a/k/a "Tony," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

       2.  It was a part and an object of the conspiracy that ELIZABETH PAEZ VAZQUEZ, LUIS AARON SOLANO-MONROY, and JUAN PABLO BECERRA, a/k/a "Tony," and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that ELIZABETH PAEZ VAZQUEZ, LUIS AARON SOLANO-MONROY, and JUAN PABLO BECERRA, a/k/a "Tony," conspired to distribute and possess with intent to distribute was 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Special Agent with DEA. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my participation in this investigation, including my conversations with other law enforcement officers and a confidential source who has been working with the DEA ("CS-1");[1] my review of recordings made by CS-1 of phone calls and in-person conversations; and my review of reports and records, including returns from a search warrant for location information and pen register information associated with a particular cellphone (the "Target Cellphone"),[2] I have learned the following, in substance and in part:

---

[1] CS-1 is a paid informant who has been working with the DEA for approximately one year. Before that, CS-1 worked as a paid informant for approximately three years with the DEA and the Federal Bureau of Investigation. Information that CS-1 has provided to law enforcement has been corroborated through independent means, and has led to multiple arrests and seizures related to narcotics trafficking and distribution.

[2] On or about November 14, 2019, Magistrate Judge Katharine H. Parker signed a warrant and order for prospective location

a.      Since at least in or about November 2019, the DEA has been investigating a suspected drug trafficking and money laundering organization (the "DTO") operating in the Baltimore, Maryland and New York City areas.  JUAN PABLO BECERRA, a/k/a "Tony," the defendant, is one of the targets of the investigation.

### The November 2019 Methamphetamine Shipment

b.      On or about November 12, 2019, BECERRA called CS-1 from the Target Cellphone.  In sum and substance, BECERRA told CS-1 that a shipment of methamphetamine for CS-1's purchase would be transported by vehicle to the New York City area at some point during the weekend of November 16-17, 2019.  In sum and substance, BECERRA also requested a meeting with CS-1 on or about November 15, 2019 to further discuss the contemplated narcotics transaction.  In sum and substance, CS-1 agreed to the meeting.

c.      On or about November 14, 2019, BECERRA and CS-1 participated in another phone call, with BECERRA again using the Target Cellphone.  In sum and substance, BECERRA told CS-1 that a female individual was driving the narcotics shipment to the New York City area, and that the shipment would arrive in the New York City area late on the night of November 14, 2019.  In sum and substance, CS-1 asked BECERRA if he needed any tools or a warehouse to unload the narcotics shipment, to which BECERRA responded, in sum and substance, that he would prefer an indoor location at which to unload the narcotics shipment, and that the only tools BECERRA would need were a screwdriver and a wrench to remove the narcotics shipment from the vehicle.  In sum and substance, CS-1 told BECERRA that CS-1 would call him on the night of November 14, 2019, or on November 15, 2019, to discuss the location of their upcoming meeting.

d.      On or about November 15, 2019, location data for the Target Cellphone showed that BECERRA was traveling from in or around Baltimore to the New York City area.

e.      On or about November 15, 2019, BECERRA used the Target Cellphone to arrange a meeting with CS-1 to discuss the planned narcotics transaction.  BECERRA and CS-1 met at a restaurant in or around Riverdale in the Bronx, New York at

---

information and pen register information for the Target Cellphone.

approximately 10:30 p.m. During the meeting, BECERRA told CS-1, in sum and substance, that he was looking for somewhere to stay that night. CS-1 took BECERRA to a hotel near a mall in Yonkers, New York ("Hotel-1"). CS-1 left BECERRA in the parking lot of Hotel-1. Law enforcement officers observed BECERRA remain in his vehicle in the parking lot of Hotel-1 for approximately several hours.

          f. On or about November 16, 2019, at or around 2:00 a.m., law enforcement officers observed BECERRA drive to a different hotel on Tuckahoe Road in Yonkers, New York ("Hotel-2") and wait in the parking lot. Soon thereafter, another vehicle with Missouri license plates ("Vehicle-1") pulled into the parking lot of Hotel-2. Two female individuals ("Individual-1" and "Individual-2") exited Vehicle-1 and walked over to BECERRA's vehicle with their luggage. BECERRA checked Individual-1 and Individual-2 into Hotel-2 and paid for their room. BECERRA slept in his vehicle in the parking lot while Individual-1 and Individual-2 slept in their room.

          g. Later that day, at or around 1:00 p.m., Individual-1 and Individual-2 exited Hotel-2, entered Vehicle-1, drove onto I-87. Based on Individual-1's commission of at least one traffic infraction, Vehicle-1 was pulled over by law enforcement officers. Individual-1, who was driving Vehicle-1, was asked to produce a license and registration for Vehicle-1. Individual-1 was also asked for consent to search Vehicle-1, which she provided. In part because the paperwork that Individual-1 provided to the officers was deficient, Individual-1 and Individual-2 were detained, and transported along with Vehicle-1 to the 50th Precinct of the New York City Police Department (the "NYPD").

          h. Once back at the 50th Precinct, Individual-1 and Individual-2 were Mirandized and interviewed. In sum and substance, Individual-2 stated that they had been paid to transport something in Vehicle-1 from Missouri to New York City, but that she did not know what that something was. Law enforcement officers also conducted a search of Vehicle-1. In a concealed compartment ("Trap-1") in Vehicle-1, they recovered approximately four kilograms of what, based on their training and experience, they believed to be narcotics: specifically, methamphetamine. Vehicle-1 was thereafter transported to the New York City Sheriff's Office in Long Island City, New York (the "Sheriff's Office").

          i. Approximately two days later, on or about November 18, 2019, at the Sheriff's Office, law enforcement

4

officers met with an NYPD officer ("Officer-1"), who is a certified handler of narcotics-detection canines. Specifically, on that date, Officer-1 was accompanied by a narcotics-detection canine named Balu, who was exposed to Vehicle-1 for exterior inspection.[3] Balu alerted to Vehicle-1, which indicated the presence of narcotics odors, which in turn indicated the presence of narcotics. Balu specifically alerted to a particular area of Vehicle-1, the wheel well of one of the right-side tires. The officers thereafter noticed incongruous screws in that area. Upon removing the screws, the officers found another concealed compartment ("Trap-2"), from which they recovered approximately six kilograms of what, based on their training and experience, they believed to be narcotics: specifically, methamphetamine.

### The December 2019 Methamphetamine Shipment

j. From on or about December 15, 2019 through on or about December 16, 2019, BECERRA and CS-1 participated in at least approximately six phone conversations, during which they discussed the logistics of another contemplated narcotics transaction. BECERRA told CS-1, in sum and substance, that another shipment of narcotics was being transported by vehicle to the New York City area for CS-1 to purchase; that an older couple would be driving the vehicle; and that the older couple knew how to operate the concealed compartment in the vehicle, but that BECERRA did not. BECERRA and CS-1 also discussed

---

[3] Balu is a German Shepherd who was originally certified as a narcotics-detection canine after completing certification with the Port Authority Police Academy in or about June 2018. Balu was certified to detect the odors of marijuana, cocaine, heroin, ecstasy, methamphetamines, and their derivatives. Since that time, Balu has received numerous hours of training, and is used regularly for the purpose of detecting narcotics odors. During Balu's training and in order to be certified, he has been subjected to numerous objects both containing and not containing narcotics. Balu is trained to differentiate and to give a positive indication if he detects the odors of narcotics. Balu was last certified in January 2019. Balu is routinely used to conduct searches of automobiles, residences, packages and suitcases. Balu will positively alert his handler to the presence of the odor of marijuana, cocaine, heroin, ecstasy, and methamphetamine and their derivatives. Balu has successfully given positive indications of narcotics in the past and generally has proven reliable in the field.

5

potentially using a garage in the New York City area to unload the narcotics for the sale.

k. On or about December 16, 2019, at or around 6:30 p.m., BECERRA and CS-1 met in the parking lot of Hotel-1 to discuss the contemplated narcotics transaction. In sum and substance, CS-1 told BECERRA that CS-1 had a garage that they could use, and that CS-1 would go ahead to the garage and send BECERRA the address. CS-1 then left the parking lot of Hotel-1 and proceeded to the vicinity of a garage located on 10th Avenue in Manhattan, New York ("Garage-1"). Law enforcement officers set up surveillance around Garage-1. CS-1 then called BECERRA and gave him the address of Garage-1.

l. Later in the evening on or about December 16, 2019, BECERRA arrived in the vicinity of Garage-1, parked his vehicle across the street, and walked into the parking lot, where CS-1 was waiting. At or around the same time, another vehicle ("Vehicle-2") with two passengers later identified as ELIZABETH PAEZ VAZQUEZ and LUIS AARON SOLANO-MONROY, the defendants, pulled into the parking lot of Garage-1. VAZQUEZ was driving Vehicle-2. VAZQUEZ and SOLANO-MONROY exited Vehicle-2, walked around to the vicinity of the trunk of Vehicle-2, and opened the trunk, exposing a concealed compartment ("Trap-3"). VAZQUEZ, SOLANO-MONROY, BECERRA, and CS-1 stood around the trunk talking. In sum and substance, BECERRA told CS-1 to get a screwdriver so that they could open Trap-3. At or around that time, the law enforcement officers conducting surveillance of Garage-1 moved into the parking lot and arrested BECERRA, VAZQUEZ, SOLANO-MONROY, and CS-1.

m. Later in the evening on or about December 16, 2019 or early in the morning on or about December 17, 2019, law enforcement officers transported VAZQUEZ, SOLANO-MONROY, BECERRA, and Vehicle-2 to the 33rd Precinct of the NYPD, where they were met by Officer-1 and Balu. When Balu was exposed to Vehicle-2 for exterior inspection, he alerted, which indicated the presence of narcotics odors, which in turn indicated the presence of narcotics. Balu specifically alerted to the vicinity of the trunk of Vehicle-2, where officers discovered Trap-3. The officers opened Trap-3, from which they recovered approximately 18 kilograms of what, based on their training and experience, they believed to be narcotics: specifically, methamphetamine.

n. Late in the evening on or about December 16, 2019 or early in the morning on or about December 17, 2019, at the 33rd Precinct, VAZQUEZ was Mirandized and interviewed by law

6

enforcement officers. In sum and substance, VAZQUEZ stated that she had been paid approximately $5,000 to drive something from California to the New York City area, but did not know what that something was. In sum and substance, VAZQUEZ also stated that SOLANO-MONROY, whom she described as her husband, knew as much as she did.

WHEREFORE, I respectfully request that ELIZABETH PAEZ VAZQUEZ, LUIS AARON SOLANO-MONROY, and JUAN PABLO BECERRA, a/k/a "Tony," the defendants, be imprisoned or bailed, as the case may be.

_____
Special Agent Joseph R. Schlee
Drug Enforcement Administration

Sworn to before me this
17th day of December, 2019

_____
THE HONORABLE KEVIN N. FOX
United States Magistrate Judge
Southern District of New York

7